Harper, Oh.
The bill states that Henry Ernest, the father of the complainant, died in 1834, possessed of considerable real and personal estate, and that the defendants, Isaac Lindsay and Dennis Lindsay, administered on his estate. It further states, *440 that the defendant, William Lindsay, the husband of the complainant, has been many years intemperate in drinking, is insolvent, and treats her with great cruelty, so that she is afraid to live with him. That she has frequently applied to the administrators to prevent their father, the said William Lindsay, from wasting the estate, and to retain her share till it may bo settled in trust for her by a decree of the Court, with which request they have refused to comply. The bill prays that complainant’s share of her father’s estate may be paid over to a trustee, in trust for her separate use, during her life, and to go, at her death, to her children.
The answer of William Lindsay generally denies the facts charged, with respect to his great intemperance, his cruelty to his wife, his insolvency or incapacity to manage his estate.
He states, that on the recommendation of the Ordinary, it was agreed, among all the parties interested, that his mother-in-law, the widow of Henry Ernest, a very aged woman, should live with him during her life, and that the whole estate should be kept together in his hands, and managed by him for her support and that of his own family; which has been done. He states that the estate has been improved in value by his management. He resists the settlement of his wife’s share of the estate upon her.
The answer of the administrators, Dennis and Isaac Lindsay, confirms that of their father, with respect to the agreement that the estate should remain in their father’s hands for the support of his mother-in-law and his own family ; they deny the excessive intemperance charged, or his incapacity to manage the property; but state, that besides supporting the mother-in-law and family, the estate has been improved by his management.
It appears that the estate has been sold since the bill filed, by order of the Ordinary.
This is not a bill for alimony, though some of the charges of the bill, and much of the testimony, would seem applicable to such a case. The complainant is not living apart from her *441 husband, nor does she pray to be protected in so living apart, nor was her claim to relief urged on that ground at the hearing.
It is put on the footing of her right, on equitable principles, to a provision out of her share of her father’s estate, yet in the hands of the administrators.
A good deal of testimony was given, which I do not think it necessary to examine minutely, as the case will be mainly decided upon legal principles. I will merely give my conclusions from the evidence, and my notes may be referred to, if necessary.
It is sufficiently established, that the defendant, William Lindsay, is, and has been, for a long time, in the habit of very intemperate drinking.
But the effect of this has not been so to impair his mind as totally to disqualify him for the management of business. I think the evidence is, that besides supporting his family, the property in his hands was well managed and improved by him.
He is not shown to be insolvent; though I suppose, that, in-depently of the property in question, his circumstances would be extremely narrow.
His conduct to his wife, when under the effect of intoxication, is proved to have been harsh and unkind ; using towards her very abusive language, and sometimes personal violence. But, upon the whole of the evidence, I cannot say that this was without fault on her part. Her temper seems to have been high, and she sometimes provoked his violence by her reproaches ; as, in .the instance mentioned by the witness, Owens. I, by no means intend to say, that there was equal blame on both sides; but only that, with more forbearance and command of temper, on her part, his conduct would probably have been better. In the language of one of her own witnesses, there seems to have been “no kindness on either side.” When not intoxicated, he seems to have been an honest, industrious and well-disposed man.
I come now to consider the complainant’s claim for a provision out of her portion of her father’s estate in the hands of *442 the administrators. There is no question concerning the rule, as laid down, 1 Fonb. 95, n. b., “that Courts of Equity, considering the husband bound, in conscience, to make a settlement upon his wife, at least adequate to her fortune, will not part with her fortune unless he do make a proper settlement.”
The objections to the interference of the Court are, that it is only upon the application of the husband for the wife’s fortune that the Court refuses its aid, and that a bill, at the suit of the wife, cannot be sustained ; that the Court does not direct funds to be paid to a trustee for the wife, but only decrees a settlement upon his proposal; that the only means of relief, is to withold the fund, and direct the interest to accumulate, for the purpose of compelling him to make proposals, and to secure the property to the wife by survivorship, if she shall outlive her husband ; that if the husband can obtain the property of the wife without the aid of the Court, the Court will not interfere ; and that, in this case, the administrators are willing to pay to the husband, unless restrained by the Court.
These views seem to be in conformity to some of the older cases, but they seem to have been modified by the later decisions. In Bosvil vs. Brander, 1 Pr. Wms. 458, where the Commissioners in Bankruptcy had assigned over to the assignees a mortgage which had been given to the bankrupt’s wife before marriage, and she brought her bill against the assignees to have the benefit of the mortgage, the Chancellor refused relief. He said, “it might have been a matter of different consideration, if the assignees had been plaintiffs in equity, and desired the aid of the Court to strip an unfortunate widow of all she had in the world; towards the doing of which, equity would hardly have lent any assistance ; because the assignees, claiming under the bankrupt husband, could be in no better plight than the husband would have been; and if the husband had, in equity, sued for the money, or else prayed that the mortgage might be foreclosed, equity (probably) would not have compelled the mortgagor to pay the money to the husband, without his making some provision for his wife — or, at the least, the wife, by an ap *443 plication to the Court against the husband and the mortgagor, might have prevented the payment of the money to the husband, unless some provision were made for her.” “ But, in the present case, the widow was plaintiff against the assignees, so that she, and not the creditors, sought the aid of equity.” So, the doctrine seems to be impliedly laid down in other cases, as in Milner vs. Calmer, 2 Pr. Wms. 641, “ that where the husband has a legal title to the wife’s personal estate, which he can come at by law, without the aid of equity, this Court will not, in such case, interpose; but where the application is in equity, for his wife’s portion in the hands of the Court, or, perhaps of a receiver, there, if he will have equity, he must do equity.” In Bond vs. Simmons, 2 Atk. 20, in the bill of the husband for the wife’s legacy, the Court referred it to the Master to receive proposals. The husband refused to make any, and the Court directed the fund to be vested and accumulate. After the husband’s death, however, the Court directed the arrears of interest, as well as the principal, to be paid over to the wife.
Mr. Cox, in his note to Bosvil and Brander, comes to the conclusion, that “ it does not seem material whether the wife, or the husband, or his general representatives or assignees come for the aid of the Court.” Among other cases, he refers to Ex parte Coysegame, 1 Atk. 192, where a bankrupt had delivered to the assignees a bond for an annuity, given to a trustee for his wife, the Court, on her petition, ordered the bond to be delivered up, and the future payments of the annuity to be made to her separate use.
The subject of sustaining such a bill by the wife, however, is fully considered and decided in Elibank vs. Montolieu, 5 Ves. 737. There the bill was by the wife against the husband, and the administrator of an estate, of which she was entitled to a distributive share. The Court decreed the wife to be entitled to a provision out of her distributive share, and it was referred to the Master to take the accounts and see a proper settlement made. In that case, it made no difference that the administrator claimed to retain the fund for a debt due tojrim by the hus *444 band. As, against any right of the husband, it was not questioned but that he might retain: but he could have no greater right than the husband. It was argued that the Court hadnever decreed against a trustee who had paid without suit, and payment to the husband’s debt, was equivalent' to payment to himself. The Reporter observes, in a note, p. 739, that the distinction upon which the case of Bosvil and Brander was decided, that the assignees were not the plaintiffs, has certainly not been attended to in the more recent authorities. To the same effect as Elibank and Montolieu, was the case of Carr vs. Taylor, 10 Ves. 574, which was a bill by the wife against an administratrix and the assignees of a bankrupt husband. These cases seem in point to the present.
In Kenny vs. Udall, 5 Johns. Ch. 465, Chancellor Kent sustained a bill by the wife against the husband and the husband’s assignee of certain stock, which had been transferred in trust to pay the dividends for the use of the wife till she attained the age of twenty-one years, then to transfer to her the principal. The trustee having refused to accept, the Assistant Register of the Court was appointed Trustee. The Chancellor declared the assignment void, as against the wife’s equity, and directed the trustee to pay the dividends to the wife till she attained the age of twenty-one ; the provision to be made for her to be then determined on reference. He lays down the rule that “the wife’s equity attaches upon her personal property, when it is subject to the jurisdiction of the Court, and is the object of the suit, into whatsoever hands it may have come, or in whatever manner it may have been transferred. The same rule applies, whether the application be by the husband, or his representatives or assignees, to obtain possession of the property, or whether it be by the wife or her trustee, or by any person partaking of that character, praying for a provision out of that property.” In our own State, in the anonymous case, 4 Eq. Rep. 94, where the bill was by the wife for alimony, to which the Court did not think her entitled, yet, as the husband and wife were, in fact, living apart, and it was necessary that she should *445 be maintained, the Court directed one-half the income of property which had been settled to the joint use of the husband and wife, to be paid to her.
When it was held that the Court could interfere only when the suit was by the husband, or one claiming in his right, and that the only relief which could be afforded was, to withold its aid till a provision should be made, there was manifest reason why a settlement should only be decreed on his proposal. But, when a bill is sustained at the suit of the wife, and the person and property are both within the jurisdiction, it would be singular indeed, if the interference of the Court might be rendered ineffectual by the obstinacy of the husband in refusing to make proposals. Great hardship and injustice might be done to the wife by directing the fund to be paid into Court and accumulate ; especially in cases where it is proper that the interest should be paid to her separate use. On the reference to ascertain the proper provision, the husband may always attend and propose or suggest what may seem to him proper. In Mr. Cox’s note to Bosvil and Brander, before referred to, the case of Watson and Mascal is quoted. That was a bill by the assignees of a bankrupt, against the husband, the wife, and the administrator of an estate, of which the wife was entitled to a distributive share. The decree is said to have been, (after directing an account) that the administrator should invest the share to which the wife was entitled, in the name of trustees to be allowed by the Master; that the interest should be paid to the wife for life, to her separate use, and after her death, to the assignees for the use of creditors.
The foregoing reasoning shows, that a mistaken inference has been drawn from expressions used in some of the cases, as in the Attorney General vs. Whorwood, 1 Ves. Sen. 539 ; thatif the husband can lay hold of the wife’s estate, without the aid of a Court of Equity, the Court will not compel him to provide for her as they will where he cannot without such aid. The true rule I take to be this — if the husband may be compelled, provided the trustee or person in whose hands the fund is, should *446 stand out for the interest of the wife, and refuse to pay unless provision be made for her, to come into Equity or any other Court of concurrent jurisdiction, there the Court will, at any time before the fund is actually paid over, on application, compel the husband to make the provision. So I understand Lord Hardwicke to say, in Jewson vs. Moulson, 2 Atk. 420, that “ if the husband can come at the chattels of the wife, without the aid of this Court, or of a Court of concurrent jurisdiction, I do not know any instance where the Court has interfered; as if the wife’s debtor will pay her debt to the husband ; so where there is a bond debt to the wife dum sola, and the husband recovers it at law, I do not know that this Court has ever granted an injunction.” He adds, “ though if a bill was brought in favor of a wife, for an injunction to stay execution upon the judgment at law, I do not know whether this Court would not grant it; but as that point is not now before me, I will not determine it.” On the general current of authorities, I apprehend the Court would not grant such an injunction. The Chancellor states, that the Court has frequently granted injunctions to stay proceedings in the ecclesiastical Courts, the Courts having concurrent jurisdiction. Such were the cases of Gardiner vs. Walker, 1 Str. 503, and Meales vs. Meales. 5 Ves. 517 n. So, if an action were maintained in a Court of Law for a wife’s legacy or distributive share, by parity of reasoning, I suppose an injunction would be granted; for this would be an exercise of concurrent jurisdiction ; otherwise, in the case of a bond given to the wife dum sola. In the case of Deeks vs. Strutt, 5 T. R. 690, determining that an action will not lie for the wife’s legacy, it is put on the ground, that a Court of Equity will make provision for the wife and family. If, in this case, the administrators had actually administered the estate, and paid over to their father his wife’s share, before the bill filed, I am not aware that she could have had any remedy.
As is said by Lord Eldon, in Murray vs. Elibank, 10 Ves. 90, referring to McCaulay vs. Philips, 4 Ves. 15, “ Previously to a bill, a trustee who has the wife’s property, real or personal, may pay *447 the rents and profits, and may hand over the personal estate to the husband. Lord Alvanley, in McCaulay vs. Philips, has laid down, that after a bill filed, the trustee cannot exercise his discretion upon that; that the bill makes the Court the trustee, and takes away his right of dealing with the property as he had previously.”
A question must be considered in the course of the case, whether the income of the property directed to be settled, shall be paid to the separate use of the wife as prayed for by the bill. In McCaulay vs. Philips, before referred to, it is laid down that, in general, the husband is entitled to the income of his wife’s fortune, unless he has received some fortune with her, or has misbehaved himself; as in Like vs. Beresford, 3 Ves. 506, by running away with a ward of the Court. Exceptions are also made, where the husband is living apart from his wife, as in Ball vs. Montgomery, 2 Ves. Jr. 197; or is bankrupt, Winman vs. Mason, 1 Pr. Wms. 459, n.; or has made a general assignment for the benefit of creditors. Prior vs. Hill, 4 Br. C. C. 139. In Sleeck vs. Thorington, 2 Ves. Sen. 562, however, it is said to be the constant rule of the Court, where the husband maintains the wife, to direct the interest to be paid to him. In the case of the bankrupt or insolvent person, the reason of the exception is obvious; unless the income were paid to the separate use of the wife, it would go to the husband’s creditors, and she would be left unprovided for. So in the case of a wife’s living apart from her husband, who has no other maintenance. In the case of a person running away with the ward of the Court, it was intended as a punishment for his contempt of the Court. Now, in this case, the defendant, William Lindsay, has in some sense misbehaved himself, but not so as to constitute a contempt of the Court. I do not know upon what authority I could undertake to punish him for his ill treatment of his wife, short of a case for alimony being made. There is no complaint made of him with respect to the maintenance of his wife, nor do I perceive grounds for any. Living together as one family, it would hardly be practicable to apportion their respective shares of *448 family expenses, and it cannot be thought that she is to receive the income of her provision to her separate use, and still demand maintenance of her husband. The main object of such a provision, is to secure to the wife a maintenance in the event of her surviving her husband. I incline to think the income must be paid to the husband; but on this point, I shall conclude nothing till the coming in of the report.
It is adjudged and declared, that the complainant, Margaret Lindsay, is entitled to a provision out of her distributive share of the estate of her deceased father, Henry Ernest, in the hands of his administrators, the defendants, Isaac Lindsay and Dennis Lindsay; and it is ordered, that it be referred to the Commissioner to take an account of the estate of the said Henry Ernest, in the hands of his said administrators; and it is further ordered, that it be referred to the Commissioner to report what portion of the complainant’s distributive share of the said estate ought to be settled on her, and the terms of such settlement, and also to report a fit and proper person to be appointed the trustee of such settlement; and it is ordered and decreed, that upon the confirmation of the said report, the said defendants, Isaac Lindsay and Dennis Lindsay, pay over such proportion of the said estate as may be reported and directed, to the trustee so appointed, to be by him invested and the income thereof disposed of according to the terms of the said settlement. Costs to be paid out of complainant’s distributive share of the estate.